## BERKEY v. CORNELL.

(Circuit Court, W. D. Virginia. April 14, 1898.)

1. ACTIONS—FEDERAL COURTS—JOINDER OF LEGAL AND EQUITABLE CLAIMS.
   Legal and equitable causes of action cannot be joined in one suit in the courts of the United States.

2. SAME.
   A declaration in assumpsit on the common counts in a federal court cannot also join a special count, which discloses a controversy between the plaintiff and defendant, requiring a construction of contracts, and the investigation, adjustment, and settlement of accounts growing out of the relations of the parties, either as partners in trade, principal and agent, or trustee and cestui que trust; such cause of action being of equitable cognizance.

On Demurrer to the Declaration for Misjoinder of Causes of Action.

Walbridge & Belden, for plaintiff.
Sipe & Harris, for defendants.

PAUL, District Judge. This is an action of assumpsit brought by the plaintiff against O. H. P. Cornell and Eugene E. Barnard. Process was served on Cornell, but returned "Not found" as to Barnard. The defendant Cornell demurs to the declaration, on the ground that it embraces both legal and equitable demands. The declaration contains the usual common counts employed in that form of action, and they are not objectionable. The declaration also contains a special

count, in which the cause of action is stated, and which, it is alleged, constitutes an equitable demand. This special count is as follows:

"For that whereas heretofore, and on or about the 4th day of April, A. D. 1893, the plaintiff was the owner of an equal undivided one-half interest in a concession before then granted to him by the board of managers of the World's Columbian Exposition, held in the said city of Chicago, which concession was known as the 'Portable Chair Concession,' of which the plaintiff had theretofore sold the other equal undivided one-half interest to John S. Ford, of the city of Chicago, in the said state of Illinois. That on the said 4th day of April, A. D. 1893, the plaintiff, Julius Berkey, and the said John S. Ford, as parties of the first part, entered into a contract, at the said city of Chicago, with Oliver H. P. Cornell and Eugene E. Barnard, defendants herein, as parties of the second part, which contract provided in substance: (1) That Oliver H. P. Cornell should act as general manager for the parties of the first part, in the operation of said portable chair concession. (2) That the parties of the first part should furnish the chairs at cost; provide the necessary booths and office quarters, and sufficient money for the successful management of the business; that they should advance to the said Oliver H. P. Cornell one hundred dollars per week for his personal use, the same to be deducted from his share of the profits, and to be in lieu of any salary; and that they should also pay to the parties of the second part fifteen (15) per cent. of the net profits arising from the portable chair concession, and thirty-three and one-third (33⅓) per cent. of the profits arising from the sale of certain merchandise, if made in connection with this concession. (3) That Oliver H. P. Cornell should devote his entire attention to the business during the exposition; that, if he was unable to carry out the provisions of the contract, the said Eugene E. Barnard should carry out and complete them; and, if both should fail to perform according to the true intent of the contract, then the parties of the first part might declare it void. (4) That the parties of the second part should employ and direct the labors of all employés according to the instructions of said first parties, the latter reserving the right to employ a second assistant manager. (5) That all the parties to this contract should be governed by a certain contract then in force between the said Julius Berkey and the said World's Columbian Exposition, a copy of which is hereto attached, marked 'Exhibit A,' and made a part of this declaration. (6) That the parties of the second part should furnish to the parties of the first part a sufficient bond, with sureties approved by the parties of the first part, in the penal sum of ten thousand dollars, as security for money advanced, to the manager as hereinbefore stated, and for the faithful performance of this contract. (7) That the parties of the first part should be reimbursed for all money advanced by them for the preparation or continuance of this business, and that they might withdraw out of the proceeds of the business up to and including twenty thousand dollars in excess of the amount necessary to reimburse them; and, if the profits of the business did not amount to the above-named sum, the parties of the second part should have their proportion thereof, as hereinbefore set forth. (8) That parties of the second part should give their duebills each month for the amount of money advanced to the manager during the previous month. (9) That, in estimating the net profits, the cost of chairs and merchandise should be their net cost delivered upon the fair grounds. (10) That all receipts, from whatever source, should be deposited each day in the bank on the exposition grounds, to be drawn from only upon checks from said parties of the first part. A copy of this contract is hereto attached, and marked 'Exhibit B,' and made a part of this declaration.

"That, under the provisions of this contract, the plaintiff and the said John S. Ford provided the necessary booths and office quarters for the operation of said chair concession on the exposition grounds. That they advanced sufficient capital for the operation of the business to its best advantage. That they furnished at cost chairs in sufficient quantities, and in proper styles, to meet the demand of the public. That they advanced to the said Oliver H. P. Cornell, as general manager, during the period between and including April 26th and October 28th of the year A. D. 1893, the sum of two thousand four hundred ($2,400) dollars for his personal use, according to contract, and that they otherwise faithfully carried out and completed the provisions of said

contract. That the defendant Oliver H. P. Cornell assumed control of said chair concession at the opening of the World's Columbian Exposition, and continued in charge until its close. That, under the provisions of said contract, it was his duty to render duebills for all money advanced as hereinbefore stated; but that, in violation of this agreement, he rendered duebills, so called, but in fact promissory notes, hereinafter more fully set forth, for one thousand nine hundred fifty-one ($1,951) dollars only, of the money advanced as aforesaid. That, at the close of the said World's Columbian Exposition, he left the city of Chicago abruptly, without rendering to the plaintiff and the said John S. Ford, or either of them, any final accounting of the business of operating said chair concession; but that an inspection of his books, and the account rendered November 9, 1893, by —— Goodspeed (given name unknown), who was employed by the said defendant as bookkeeper, showed that the said defendant, Oliver H. P. Cornell, had taken from the cash drawer, at various times, in violation of the terms of said contract, and without the knowledge or consent of the plaintiff or the said John S. Ford, the total sum of nine hundred fifty-one ($951) dollars. The account rendered by the said —— Goodspeed (given name unknown) further showed that there was a cash shortage in this business of two hundred thirty and forty-seven one-hundredths ($230.47) dollars, which shortage was caused by the errors and negligence of the defendant Oliver H. P. Cornell and his employés, in direct violation of the terms of said contract, in the operation of said chair concession; and therefore the said defendants, Oliver H. P. Cornell and Eugene E. Barnard, became, and still are, indebted to the said plaintiff, Julius Berkey, and the said John S. Ford, in the sum of three thousand five hundred eighty-one and forty-seven one-hundredths ($3,581.47) dollars.

"The said plaintiff further alleges that the said Oliver H. P. Cornell, one of said defendants, after the making of said contracts hereinbefore set forth, and in pursuance of the same. under the name of O. H. P. Cornell, made, executed, and delivered to the said plaintiff certain so-called due bills, but in legal effect promissory notes, which said notes are in the words and figures as follows, that is to say: There are five of these notes of different dates, but a copy of one will be sufficient to show the character of all.

" '$300.00                                            Chicago, May 1st, 1893.

" 'On demand after date, I promise to pay to the order of Berkey & Ford three hundred dollars, payable according to contract dated April 4th, between Berkey & Ford and Cornell and Barnard, value received.

" 'O. H. P. Cornell.'

"Plaintiff further avers that afterwards, and on, to wit, the 10th day of December, A. D. 1896, all of said above-named notes were duly presented to the said O. H. P. Cornell at Harrisonburg, in the county of Rockingham and state of Virginia, and demand of payment was then and there duly made upon the said O. H. P. Cornell personally; but that the said O. H. P. Cornell then and there refused to pay the same. or any part thereof, and still does neglect and refuse to pay said notes.

"Plaintiff further alleges that, during the continuance of the World's Columbian Exposition, a large number of chairs were sold and rented under this concession, so that the gross receipts arising therefrom amounted to the sum, to wit, sixty-six thousand ($66,000) dollars; but that the said Oliver H. P. Cornell conducted the business in such a reckless and extravagant manner, without regard to the heavy expenses thus incurred, that the net profits amounted to a much smaller sum; that on the 29th day of October, A. D. 1896, the said John S. Ford, for a valuable consideration, duly assigned, transferred, and set over to the said plaintiff, Julius Berkey, all his right, title, and interest, of every name and nature, of, in, and to said contract, marked 'Exhibit B,' and the said notes hereinbefore set forth, a copy of which assignment is hereto attached, marked 'Exhibit C,' and made a part of this declaration."

The following is the contract or agreement entered into between Berkey and Ford, of the first part, and Cornell and Barnard, of the second part, the provisions of which are recited in the declaration:

"This agreement, made and entered into on this fourth day of April, A. D. 1898, at the city of Chicago, county of Cook and state of Illinois, by and between Julius Berkey, of Grand Rapids, Kent county, Michigan, and John S. Ford, of Chicago, Cook county, Illinois, parties of the first part, and Oliver H. P. Cornell, of Ithaca, Tompkins county, New York, and Eugene E. Barnard, of Chicago, Cook county, Illinois, parties of the second part. witnesseth:

"That whereas, the said Julius Berkey has been granted concession by the World's Columbian Exposition, known as the 'Portable Chair Concession,' in which the said John S. Ford has an equal undivided one-half interest, and is jointly responsible, with the said Julius Berkey, to the said exposition, for the faithful performance of the contract made and entered into by and between the said Julius Berkey and the said exposition:

"Now, therefore, the parties of the first part, for and in consideration of the agreements of the parties of the second part hereinafter contained, agree to and with the parties of the second part that the said Oliver H. P. Cornell shall, as general manager for the said parties of the first part at the World's Columbian Exposition at Chicago, take full charge of the operation of the concession for renting portable chairs and selling certain articles of merchandise to be hereinafter mentioned. And the said parties of the first part agree to furnish at cost all chairs of such styles and in such quantities as may be required by the World's Columbian Exposition; also to provide all necessary booths, storehouses, office quarters, and furniture as allowed or required by the said exposition; also to furnish all money to the necessary, proper, and successful management of the business; also to furnish at cost all articles of merchandise which they may be permitted to sell on the exposition grounds in connection with the said portable chair concession. And the said parties of the first part further agree to advance to the said Oliver H. P. Cornell the sum of one hundred dollars ($100) per week for his personal use, the same to be in lieu of any salary, and to be deducted from the proportion of profits of the said parties of the second part as hereinafter named; also to pay to the said parties of the second part fifteen (15) per cent. of the net profits arising from the portable chair concession, and thirty-three and one-third (33⅓) per cent. of the net profits arising from the sales of any merchandise, should such sales be made in connection with the portable chair concession.

"The parties of the second part, in consideration of the agreements of the parties of the first part herein contained, agree to and with the parties of the first part that the said Oliver H. P. Cornell shall devote his entire time and attention to the management of, and use his best endeavor for the success of, the said business of the portable chair concession, and the sales of any articles of merchandise which may be made in connection with the said chair concession during the six months commencing May 1st and ending November 1st, 1893, and as much more time before and after those dates as shall be necessary for the proper preparation for and closing up of said business; also that they will do all in their power to obtain from the World's Columbian Exposition the privilege of selling a souvenir, known as the 'Honey.Bee Perfumery Case,' and hereinbefore mentioned as merchandise; also that if, from any cause, the said Oliver H. P. Cornell shall fail to fulfill the provisions of this contract, the said Eugene E. Barnard shall carry out and complete them; and if, for any cause, both of the parties of the second part fail to perform any and every part of this contract according to its true intent and meaning, then the said parties of the first part may declare the same void, and all the rights and privileges granted therein to be forfeited.

"It is understood by and between all the parties to this contract that the said parties of the second part are to employ and direct the labors of all the employés, and be guided in their conduct of the business by the instructions of of the said parties of the first part, the latter reserving the right herewith to employ in this connection a second assistant manager, who shall be, however. under the direction of the said parties of the second part. It is further understood that the said parties of the second part are to be governed by a certain contract now in force between the World's Columbian Exposition and Julius Berkey. It is further understood that the said parties of the second part shall furnish to the said parties of the first part, upon the signing of this contract, a good and sufficient bond, with sureties approved by the parties of

the first part, in the penal sum of ten thousand dollars ($10,000), as security for money advanced to the manager, as hereinbefore stated, and for the faithful performance of the provisions of this contract. It is further understood that the said parties of the first part are to be reimbursed for any and all amounts of money invested or other material furnished in the necessary preparation for and continuance of the business as herein contemplated, and that they shall have the right during the operation of said business to draw out from time to time, as they shall choose, such sums of money as they may desire, up to and including twenty thousand ($20,000) dollars in excess of the amount necessary to reimburse them for any previous investment advanced, after which said parties of the second part shall be allowed to draw their proportionate amount of the net profits, less what may have been advanced to the manager, as hereinbefore mentioned, after which further division of all net profits shall be made between the parties hereto, as their interests may appear. It is understood that the withdrawal of the above-named twenty thousand ($20,000) dollars does not in any wise interfere with or vitiate the other terms of this contract in the final settlement, which shall be made as soon as possible after the close of the exposition, on October 31st next. Said parties of the first part agree, in case the profits of the business do not amount to the above-named sum of twenty thousand dollars ($20,000), that the parties of the second part shall have their proportion of the net profits, whatever they may be, as hereinbefore set forth. It is still further understood that the parties of the second part shall give their duebills each and every month for the amount of money advanced to the manager for his personal use during the month previous, and that no salary or interest on money invested is to be charged by or paid to any person interested in this contract, nor is any person to be reimbursed for money or time expended previous to the signing of this contract. It is also further understood that, in estimating the net profits, the cost of chairs and merchandise, which shall be their net cost delivered upon the exposition grounds, together with the costs of booths, storehouses, other necessary appliances, and all other necessary expenses for the proper management of the business, together with the percentage of the receipts paid to the exposition authorities, shall first be deducted from the gross receipts, and the remainder shall be the net profits. In calculating the division of expenses between the 'Chair Concession' and the 'Honey Bee Perfumery Case,' the former shall be charged with two-thirds of the general expenses, and the latter with one-third. It is still understood that all the receipts, from whatever source, are to be deposited each day in the bank on the exposition grounds, and to be drawn from thence only upon checks from said parties of the first part. Whatever funds said parties of the second part may need for the proper conduct of the business shall be paid to them or their order upon their requisition in detail. It is further understood that none of the provisions of this contract, either expressed or implied, shall make the parties hereto copartners, or liable in any way for the obligations of each other incurred otherwise than herein provided.

"In testimony whereof, the said several parties to this contract have hereunto signed their names, the day and year first above written.

"[Signed]                Julius Berkey. [L. S.]
                       "John S. Ford. [L. S.]
                       "Oliver H. P. Cornell. [L. S.]
                       "Eugene E. Barnard. [L. S.]

"In presence of
    "Geo. G. Whitworth."

The plaintiff files with his declaration a bill of particulars of his demand, embracing the notes mentioned in the declaration, items of cash advanced, and cash withdrawn from the receipts of the portable chair concession, in violation of the terms of the contract. The last consisted of a large number of items, ranging from $2.50, the lowest, to $209.80, the highest. The defendant Cornell files a plea in the case giving his construction of the contract, and claims that there is due to him thereunder, for labor and services performed, a large sum of

money, equal to the plaintiff's demand, which he asks to have set off against the plaintiff's claim.    The plea is as follows:

"The said defendant, O. H. P. Cornell, by his attorneys, comes and says that before the making of said writings in the said declaration mentioned and therein described as duebills, to wit, on the 4th of April, 1893, it was mutually agreed and understood between the said plaintiffs and the said defendant that this defendant was to be the manager of a certain concession granted by the World's Columbian Exposition, and that, under the terms of said contract, this defendant was to receive the sum of one hundred dollars per week as compensation as said manager, and he was also to receive fifteen per cent. of the net profits that might arise from the operations of said concession; it being understood, however, that, from the share of this defendant in said net profits, the said sum of $100 per week should be deducted, though this defendant did not agree to return to said plaintiffs the said sum of $100 per week, or any part thereof, in the event his share in said net profits should fall short of that amount; it being the true intent and understanding between the parties that, in the event said share of this defendant in the net profits should not equal the sum of $100 per week, then this defendant was to be paid the said sum as the manager aforesaid.    And it was further provided in said contract that, for the purpose of ascertaining the amount of money paid to this defendant on account of his said personal services as manager, he was to execute from time to time what was denominated 'duebills,' in evidence of the amount of money so received by him; but there was to be no right in the said plaintiffs to have and demand of this defendant any part thereof. And this defendant says that, while it is true he did execute the duebills described in said declaration, yet the same did not cover all of the money due to this defendant on account of his salary as aforesaid, because he says that his salary of $100 per week ran for thirty (30) weeks, to wit, from the 4th day of April, 1893, to the 4th day of November, 1893.    And this defendant says that he diligently and faithfully performed the promises and undertakings on his part, and did render the services as manager, aforesaid, during the time aforesaid, without intermission even on Sundays, averaging, at least, fifteen hours a day.    And the said defendant says that he is entitled to have the said notes or duebills surrendered and delivered to him, in accordance with the true understanding of said contract; and that there is due to him on account of the services and labor performed by him as aforesaid, under said contract, a large sum of money, which the said plaintiffs have heretofore wholly failed and refused to pay; and that he has sustained damages on account of the breach thereof by the said plaintiffs, amounting to the sum of three thousand dollars, which is still unpaid and due from the said plaintiffs to this defendant, which this defendant is ready and willing and hereby offers to set off and allow the same against the sum of money, if any, that may be payable to the said plaintiffs by this defendant by force of the said duebills or writings upon which this action is in part founded, or the cash alleged to have been received by this defendant.    And this the said defendant is ready to verify."

At the time of filing the aforesaid plea, the defendant filed the following affidavit:

"This day, before the undersigned, a notary public in and for the county and state aforesaid, came O. H. P. Cornell, and made oath that, as is shown in the contract between the plaintiffs and this defendant, in the above-entitled cause, filed with the declaration therein, and marked 'Exhibit B,' this defendant is entitled to fifteen per cent. of the net profits that were made and accrued to the parties under said contract, in the operation of what is known as the 'Portable Chair Concession' at the World's Columbian Exposition, and that the gross receipts of said business amounted to a large sum of money, to wit, $70,000; that the cost of the chairs, some thirty thousand in number, did not exceed five or six thousand dollars, and that after paying to the World's Fair commission the share of the gross receipts to which they were entitled under the contract, and after paying all of the expenses of managing and renting out the chairs, there was left a large profit, and that this affiant, under said

contract, is entitled to his share of 15% thereof; that the gross receipts were deposited in the bank on the exposition grounds, upon which this affiant had no right to check, nor did this affiant handle the money which was taken in from day to day; that this affiant, having been taken sick at the last days of the exposition, was not able to have an accounting with the plaintiffs that he was entitled to in order to ascertain the net profits of the business; that in fact no such accounting has ever been made so far as this affiant knows; that affiant claims his right under said contract to have an accounting, and, as all the books and papers are in the possession of the plaintiffs, he demands and calls for the production of the same, in order that he may properly concert his defenses to the alleged indebtedness set out in said declaration, and that he may be enabled to ascertain what, if any, money is due to him on account of said share in said profits, which this affiant verily believes would amount to a very large sum, over and above the $100 per week as compensation for his services, if affiant could have a fair and full settlement of the affairs and business of said portable chair concession, but affiant is unable to state what the net profits were, on account of there never having been a settlement, as aforesaid; that affiant is advised that he has a right to call for the production of all of said books and papers, consisting of the ledger, cashbook, daybook, passbook, in the bank, the vouchers representing the cost of the chairs, and all the books and papers connected with the business of said portable chair concession; that this affiant further states that he is unable to fully concert his defenses to the said demand of the said plaintiffs in said suit without the production of said books and papers, and, being advised that he has a right to call for the same, he does hereby call for and demand the production thereof. Given under my hand," etc.

The principle that legal and equitable claims cannot be blended together in one suit in a circuit court of the United States is too well established to admit of discussion. "The constitution of the United States and the acts of congress recognize and establish the distinction between law and equity. The remedies in the courts of the United States are at common law or in equity, not according to the practice of state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of these principles." Thompson v. Railroad Co., 6 Wall. 134; Robinson v. Campbell, 3 Wheat. 212; Hurt v. Hollingsworth, 100 U. S. 100. The last was a case brought up on writ of error from the circuit court for the Eastern district of Texas. In that state, what is known as the "Code Practice" obtains, and equitable and legal causes of action had been blended in the suit in the circuit court. The supreme court, discussing this question, says:

"In the federal courts, such a blending of equitable and legal causes of action in one suit is not permissible under the process acts of 1792, substantially re-enacted in the Revised Statutes, which declares that, in suits in equity in the circuit and district courts of the United States, the forms and modes of procedure shall be according to the principles, rules, and usages which belong to courts of equity. Rev. St. § 913. This requirement has always been held obligatory upon parties and the court whenever the question has been raised. Thompson v. Railroad Co., 6 Wall. 134. A party who claims a legal title must therefore proceed at law, and a party whose title or claim is an equitable one must follow the forms and rules of equity proceedings as prescribed by this court, under authority of the act of August 23, 1842."

Applying the unquestioned doctrines of these decisions to the pleadings in this case, can the matters therein stated be determined in an action at law? Does not the claim of the plaintiff, as asserted in the special count of the declaration, present an equitable demand, and that must be settled by proceedings to be had in a court of equity? There

is no fixed and inflexible rule by which a court can determine whether the remedy to be pursued should be at law or in equity.

In Watson v. Sutherland, 5 Wall. 74, Mr. Justice Davis says:

"The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case must depend altogether upon the character of the case as disclosed by the pleadings."

The pleadings in the case at bar disclose a controversy between the plaintiff and defendant, which requires the construction of contracts, the investigation, adjustment, and settlement of accounts growing out of the relations of the plaintiff and defendant, whether that relation be one of parties between whom there are mutual accounts, or of partners in trade, principal and agent, or trustee and cestui que trust. A court of law, through the medium of trial by a jury of these complicated questions, is entirely inadequate to furnish the plain and adequate remedy which confers upon it jurisdiction. The jurisdiction of courts of equity in matters of account grew out of the failure of the common law to furnish an adequate and legal remedy for their settlement. The only remedy afforded by the common law to compel the settlement of accounts, and to ascertain the balance due, was the ancient (now obsolete) action of account. But the jurisdiction of equity has for ages been exercised in matters of account to which the action of account was not applicable; and this, in consequence of the inadequacy of the existing legal remedy. 4 Minor, Inst. pt. 2, pp. 1215, 1216:

"The jurisdiction of equity, therefore, now extends, not only to cases of an equitable nature, but to many cases where the items constituting the demand are of a character purely legal, and such as are often, although under great disadvantages, the subject of actions at law, other than the action of account, such as debt, covenant, and trespass on the case in assumpsit."

The statement of the plaintiff's demand in the special count of the declaration is of an equitable nature, and of such a complicated character that it cannot be properly settled in an action at law. The demurrer will be sustained as to the special count in the declaration, but without prejudice to the plaintiff's right to replead on the equity side of the court.